1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2    Including Professional Corporations
   HARPER S. BATTS, Cal. Bar No. 242603
3  hbatts@sheppardmullin.com
   CHRISTOPHER PONDER, Cal. Bar No. 296546
4  cponder@sheppardmullin.com
   JEFFREY LIANG, Cal. Bar No. 281429
5  jliang@sheppardmullin.com
   379 Lytton Avenue
6  Palo Alto, California 94301-1479
   Telephone:  650.815.2600
7  Facsimile:   650.815.2601

8  COVINGTON & BURLING LLP
   WINSLOW B. TAUB, Cal. Bar No. 233456
9  wtaub@cov.com
   Salesforce Tower, 415 Mission Street
10 San Francisco, California 94105-2533
   Telephone:   415.591.6000
11 Facsimile:   415.591.6091

12 Attorneys for Defendant
   WARGAMING GROUP LIMITED
13

14              UNITED STATES DISTRICT COURT

15      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

16

| | |
|---|---|
| 17  GAME AND TECHNOLOGY CO., LTD. | Case No. 2:16-cv-06554 JAK (SKx) |
| 18                   Plaintiff, | **NOTICE OF MOTION AND MOTION FOR EXCEPTIONAL** |
| 19         v. | **CASE FINDING AND ATTORNEY FEES and MEMORANDUM OF** |
| 20  WARGAMING GROUP LIMITED,, | **POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| 21          Defendant. | |
| 22  | The Hon. John Kronstadt |
| 23  | Date:     June 29, 2020 |
| 24  | Time:     8:30 a.m.<br>Judge:    Honorable John A. Kronstadt<br>Court:    10B |
| 25  | |
| 26  | *[Filed concurrently with Declaration of Christopher Ponder]* |
| 27  | |
| 28  | |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 29, 2020 at 8:30 a.m. or as soon thereafter as counsel may be heard in the courtroom of the Honorable John A. Kronstadt, United States District Judge, located at First Street Courthouse, 350 W. First Street, Courtroom 10B, Los Angeles, CA 90012, Defendant Wargaming Group Limited ("Wargaming") will and hereby does move the Court for an order finding this case exceptional under 35 U.S.C. § 285 and awarding Wargaming its attorney's fees in the amount of $133,682 and $16,506.17 in expenses incurred defending itself against Plaintiff Game & Technology Co., Ltd.'s ("GAT") exceptional and unreasonable conduct on the issue of whether Wargaming's petition was time-barred.

This Motion is brought pursuant to 35 U.S.C. § 285 and is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities and Attachments 1 and 2, the Declaration of Christopher Ponder, and the exhibits attached thereto, which are incorporated by reference into this Motion, and such other and further briefing, evidence and argument as may be presented to the Court.

This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on April 6, 2020.

Dated:  April 14, 2020        SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                              By    _____*/s/ Christopher S. Ponder*_____
                                    HARPER S. BATTS
                                    CHRISTOPHER S. PONDER
                                    JEFFREY LIANG
                                    Attorneys for
                                    WARGAMING GROUP LIMITED

# TABLE OF CONTENTS

**Page**

I.      Introduction ...................................................................................1

II.     Relevant Facts and Background ....................................................2

III.    Legal Principles .............................................................................9

IV.     Argument ......................................................................................12

      A.      Wargaming is the "Prevailing Party" For All Purposes ......................12

      B.      Wargaming Is Entitled to Attorneys' Fees Here ..................................13

            1.      GAT's Misconduct, Lack of Candor and Unreasonable Manner in which it Litigated the Issue of Service Are Exceptional and Warrant an Award of Fees ............................13

            2.      It Is Proper to Award Wargaming's Requested Fees under Section 285 ...................................................................18

      C.      Amount of Fees Sought Here Is Limited in Scope and Time, and Is Reasonable .........................................................21

ATTACHMENT 1 .............................................................................................1

ATTACHMENT 2 .............................................................................................1

# TABLE OF AUTHORITIES

**Page(s)**

<u>Cases</u>

*AdjustaCam, LLC v. Newegg, Inc*.
   861 F.3d 1353 (Fed. Cir. 2017) ........................................................................18

*Am. Vehicular Scis. LLC v. Autoliv, Inc*.
   405 F. Supp. 3d 728 (E.D. Mich. 2019) ..................................................10, 20

*Automotive Techs. Int'l, Inc. v. Siemens VDO Auto. Corp*.
   744 F. Supp. 2d 646 (E.D. Mich. 2010) ..........................................................21

*B.E. Tech., L.L.C. v. Facebook, Inc.*
   940 F.3d 675 (Fed. Cir. 2019) ..................................................................12, 13

*Blanchard v. Bergeron*
   489 U.S. 87 (1989).............................................................................................21

*Canvs Corp. v. U.S.*
   104 Fed. Cl. 727 (2012) ......................................................................................5

*Cent. Soya Co. v. Geo A. Hormel & Co*.
   723 F.2d 1573 (Fed. Cir. 1983) ......................................................................22

*Chaffin v. Braden*
   No. 6:14-0027, 2016 WL 5372540 (S.D. Tex. Sept. 26, 2016)........................11

*Classen Immunotherapies, Inc. v. Biogen Idec*
   381 F. Supp. 2d 452 (D. Md. 2005)...................................................................5

*Deep Sky Software, Inc. v. Southwest Airlines Co*.
   No. 10-cv1234, 2015 WL 10844231 (S.D. Cal. Aug. 19, 2015) .................12, 19

*Game & Tech. Co. v. Wargaming Grp. Ltd*.
   942 F.3d 1343 (Fed. Cir. 2019) ..........................................................8, 9, 16, 17

*Hensley v. Eckerhart*
   461 U.S. 424 (1983).........................................................................................21

*Inland Steel Co. v. LTV Steel Co*.
   364 F.3d 1318 (Fed. Cir. 2004) ......................................................................12

MOTION FOR EXCEPTIONAL CASE FINDING AND ATTORNEY FEES

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*
   876 F.3d 1372 (Fed. Cir. 2017) ...................................................... 11, 20

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*
   No. CV 11-03398-R, 2017 U.S. Dist. LEXIS 62617 (C.D. Cal. Apr.
   10, 2017) .......................................................................... 11, 18, 19

*Mathis v. Spears*
   857 F.2d 749 (Fed. Cir. 1988) ........................................................... 21

*Microstrategy Inc. v. Crystal Decisions, Inc*.
   No. 03-1124-MPT, 2008 WL 782842 (D. Del. March 25, 2008) ........................ 21

*Munchkin, Inc. v. Luv N' Care, Ltd*.
   No. CV 13-06787 JEM, 2018 U.S. Dist. LEXIS 223150 (C.D. Cal.
   Dec. 27, 2018) ............................................................... 11, 12, 18, 19

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*
   572 U.S. 545 (2014) .............................................................. 9, 10, 17, 18

*PPG Indus., Inc. v. Celanese Polymer Specialties Co.*
   840 F.2d 1565 (Fed. Cir. 1988) .................................................... 12, 19

*SRI Int'l, Inc. v. Cisco Sys., Inc.*
   930 F.3d 1295 (Fed. Cir. 2019) ........................................................ 10

*Therasense, Inc. v. Becton Dickinson & Co.*
   745 F.3d 513 (Fed. Cir. 2014) .................................................... 11, 20

<u>Statutes</u>

35 U.S.C. § 285 ................................ 2, 9, 10, 12, 13, 18, 19, 20, 21, 22

35 U.S.C. § 311(b) ........................................................................ 10

35 U.S.C. § 315(b) ......................................................................... 3

Lanham Act ................................................................................ 10

Patent Act ............................................................................. 9, 10

<u>Other Authorities</u>

37 C.F.R. § 42.11(d) ..................................................................... 20

37 C.F.R. § 42.12 ........................................................................ 20

Federal Rule of Civil Procedure 4 ........................................1, 2, 8, 13, 14, 17, 19, 20

Federal Rule of Civil Procedure 4(a) ............................................................. 6, 15, 16

Federal Rule of Civil Procedure 4(b) ............................................................. 6, 15, 16

Federal Rule of Civil Procedure 4(d) ..................................................................2, 9, 17

Federal Rule of Civil Procedure 4(f)(1) ...................................................................13

Federal Rule of Civil Procedure 11 ................................................................... 5, 20

Federal Rule of Civil Procedure 54(d) ...............................................................12

H.R. Rep. No. 112–98, pt. 1 (2011) ......................................................................10

(http://oralarguments.cafc.uscourts.gov/de-fault.aspx?fl=2019-1171.mp3) .........................................................................2, 9, 17

U.S. Patent No. 7,682,243 ..............................................................................2, 3, 9

# I.      Introduction

Motions for attorney fees are not taken lightly, but Plaintiff Game & Technology Co., Ltd.'s ("GAT") conduct in this dispute necessitates the current motion.  As outlined below, GAT introduced false evidence into the record to support its arguments that Defendant Wargaming Group Limited's ("Wargaming") petition for *inter partes* review ("IPR") was time-barred.  Despite uncontested witness testimony that established no effective service had taken place, GAT unreasonably continued to press its claim that it had properly served Wargaming more than one year before Wargaming filed its petition throughout the IPR proceedings and on appeal to the Federal Circuit.  Wargaming is only seeking the $133,682 in fees and $16,506.17 in expenses incurred defending itself against GAT's exceptional and unreasonable conduct on the issue of whether Wargaming's petition was time-barred.  This less than what Wargaming actually paid for these services and a fraction of the total fees Wargaming incurred in connection with this litigation, IPR and appeal.  (Declaration of Christopher Ponder filed herewith ("Ponder Decl."), ¶¶ 28-30.)

An IPR petition is only time-barred if it is filed more than a year after proper service on the defendant of a complaint alleging infringement of the patent.  GAT never properly served Wargaming in this action pursuant to Federal Rule of Civil Procedure 4.  Once Wargaming filed its IPR petition, however, GAT attempted to create a false record of service to support its claim that the IPR was time-barred.  First, GAT attempted to pass off a falsified process server affidavit purporting to show the documents served on Wargaming to support its claim that it had effected proper service under Rule 4.  Wargaming was forced to travel to London (where service allegedly occurred) to take the deposition of the process server ***who testified***

1    *that he had not served the documents GAT submitted into evidence*.[1]  Conceding

2    that it had not actually served a signed and sealed summons issued by the Court,

3    GAT changed tactics and filed a materially misleading "Notice of Service" with this

4    Court claiming that Wargaming's counsel had "*confirmed service* [on] their client

5    in the UK and in Cypress [*sic*]."  Dkt. 37 at 2 (emphasis added).  Wargaming's

6    counsel was forced to refute this claim also with evidence of the original email

7    exchange between Wargaming's and GAT's counsel showing that Wargaming had

8    in fact maintained that service had never properly effected.  Nevertheless, GAT

9    unreasonably continued to press an ever-changing argument that the IPR was time-

10   barred.  Even on appeal to the Federal Circuit, GAT raised new arguments in reply,

11   claiming that Wargaming had waived service.  Then at oral argument, GAT finally

12   conceded that the only waiver of Rule 4's requirements is provided under Rule 4(d),

13   and admitted that no such waiver occurred.  Oral Arg. at 8:54-9:35

14   (http://oralarguments.cafc.uscourts.gov/de-fault.aspx?fl=2019-1171.mp3).

15       GAT's conduct has been exceptional by any standard and has unduly

16   burdened Wargaming.  Wargaming respectfully requests that the Court find that

17   GAT's activities warrant an exceptional case determination under 35 U.S.C. § 285,

18   and that Wargaming be awarded attorneys' fees and costs related to addressing

19   GAT's unreasonable arguments concerning a time-bar of the IPR petition.

20   **II.    Relevant Facts and Background**

21       This case was filed on July 9, 2015 in the Eastern District of Texas, asserting

22   infringement by Wargaming of U.S. Patent No. 7,682,243.  The case was transferred

23   to this Court on August 5, 2016.  On March 13, 2017, Wargaming filed a petition for

24

25   _____

26   [1]  As will be shown, GAT unreasonably increased the costs of discovery concerning
     the purported service in the United Kingdom by scheduling a deposition of
27   Wargaming's London agent which it then cancelled after Wargaming's counsel had
     already prepared for and travelled to London for the deposition.
28

1    inter partes review of the '243 patent.[2]

2          In its Patent Owner Preliminary Response filed on July 14, 2017, GAT argued

3    that the petition was time-barred under 35 U.S.C. § 315(b).  Ponder Decl., Ex. C at

4    p. 4.  GAT's argument was solely based on an allegation that Wargaming's

5    registered agent in London, Mr. Costas Joannou, had been served under the Hague

6    Convention by a United Kingdom process server named John Talbot.  *Id.* at 4-5.

7    The only evidence that GAT included to support this argument was Ex. 2002, a

8    "Witness Statement" by Mr. Talbot.  *Id.* at 4.  However, the witness statement was

9    missing referenced exhibits, meaning it did not contain any copies of the documents

10   that were allegedly served on Wargaming.  Ponder Decl., ¶ 37.  Wargaming's

11   counsel requested that GAT provide the referenced exhibits showing the materials

12   that were allegedly served.  *Id.*

13         On July 28, 2017, GAT filed Supplemental Ex. 2002, which in addition to

14   containing Mr. Talbot's Witness Statement, contained copies of the documents

15   allegedly served on Wargaming, ***including two copies of a summons bearing the***

16   ***clerk's signature and the Court's seal***.  *See* Ponder Decl., Ex. D at Appx1754-55

17   and Appx1756-57.

18         On August 16, 2017, Wargaming filed a Reply supporting its Petition for

19   Inter Partes Review and supporting declaration from Wargaming's agent, Mr.

20   Joannou, stating that he had no record or recollection of having been served with

21   any documents and his diary indicated that it was very unlikely that he was in the

22   office at the time he was allegedly served.  Ponder Decl., ¶ 39.

23         The PTAB granted institution of the IPR on October 6, 2017.  Because of the

24   dispute regarding alleged service in the UK, the PTAB ordered a special round of

25   briefing dedicated to the question of whether the petition was time-barred.  Ponder

26

27   ───────────────────

28   [2]  Wargaming promptly sought a stay of this case for the duration of the IPR.  After
     a joint stipulation was filed by the parties, the Court stayed the case on June 8, 2017.

Decl., Ex. E at p. Appx3043-45.  The parties scheduled the respective depositions of Mr. Talbot and Mr. Joannou in London on November 2, 2017.  *Id.*, Ex. F at p. 4. The two days before his scheduled deposition (and after Wargaming's counsel had flown to the UK and prepared for the deposition), GAT's counsel informed Wargaming that it would no longer proceed with the deposition of Mr. Joannou. Ponder Decl., ¶ 41.

On November 2, 2017, Wargaming conducted the deposition of the process server, Mr. Talbot.  During the deposition, Mr. Talbot testified that Supplemental Exhibit 2002 was not the packet of documents that he allegedly served on Wargaming.  Ponder Decl., Ex. G, Appx1615 at 73:3-10 ("They are most definitely not the bundle that I served, whether they are incomplete or completely wrong I don't know, but they are certainly not what I served."); Appx1616-17 at 74:25-75:9.

Shortly after the Talbot deposition, on November 10, 2017, GAT filed a "Notice of Service" with this Court purporting to show service on Wargaming on December 14, 2015.  Dkt. 37.[3]  GAT's "Notice of Service" falsely claimed that Wargaming's counsel "***confirmed service*** [on] their client in the UK and in Cypr[us]…" on a February 11, 2016 telephone call.  Dkt. 37 at 2.

However, Wargaming refuted Mr. Zito's false representation that Wargaming had "confirmed service" with an email memorializing the February 2016 call.  In that email, Wargaming stated, "we still do not believe that service was properly effected on either Wargaming entity," although the defendants agreed to "waive service and [] defenses to improper service in exchange" for more time to file their responsive pleading in the district court action.  Ponder Decl., Ex. H at Appx1631. The email was sent to Mr. Zito, who did not mention that this email existed in his "Notice of Service" even though he went to the trouble of trying to document the

_____

[3]  GAT's counsel Mr. Zito filed this document as a "Proof of Service" in ECF.  The docket entry reads "PROOF OF SERVICE filed by Plaintiff Game and Technology Co. Ltd, Original Complaint served on December 14, 2015."

1   phone call by pulling his telephone records from a year earlier.

2         GAT's Notice of Service attached a purported "38 page Exhibit A evidencing

3   service." Dkt. 37 at 2; Dkt. 37-1. Exhibit A to the Notice of Service was yet

4   another version of Mr. Talbot's Witness Statement and the documents allegedly

5   served on Wargaming's agent Mr. Joannou. Dkt. 37-1. The summonses in this

6   packet of documents each *lack any Court seal or signature*. Dkt. 37-1 at 7-8, 21-

7   22.

8         On November 14, 2017, GAT's counsel filed with the PTAB Exhibits 2019,

9   2020 and 2021. Ponder Decl., Exs. I-K. Exhibit 2021 was a declaration of GAT's

10   counsel, Joseph Zito in which Mr. Zito represented that Exhibit 2019 was "a true

11   copy of the letter and attachments" he received as proof of service and Exhibit 2020

12   was a copy of the "Notice of Service" filed with this Court. *Id*., Ex. K at Appx2058-

13   59, ¶¶ 2, 3. Mr. Zito claimed that he had "recently obtained the original service

14   documents from storage." *Id*. at ¶ 3. As with Docket 37-1, Exhibit 2019 *did not

15   contain any signed and sealed version of the summons*. *See Id*., Ex. I at

16   Appx1976-77, Appx1990-91. Mr. Zito's declaration did not explain where GAT

17   had obtained the documents comprising Supplemental Ex. 2002 that GAT filed on

18   July 28, 2017, since nearly six months later Mr. Zito had only "recently" obtained

19   the documents from storage.[4]

20         On November 17, 2017 Wargaming filed its brief on the issue of whether the

21

22   _____

   [4] In fact, although Wargaming has sought an explanation, GAT has never provided
23   an explanation as to why it submitted a false exhibit to Mr. Talbot's Witness
   Statement. Ponder Decl., ¶ 47. This would not be the first time Mr. Zito has been
24   less than assiduous in following the rules. *Canvs Corp. v. U.S*., 104 Fed. Cl. 727,
   733-34 (2012) (ordering Mr. Zito to personally pay defendant's reasonable
25   expenses, including attorney's fees, incurred in filing two motions to compel
   discovery); *Classen Immunotherapies, Inc. v. Biogen Idec*, 381 F. Supp. 2d 452, 457
26   (D. Md. 2005) (imposing Rule 11 sanction of dismissal against plaintiff for failing
27   to conduct adequate pre-filing investigation in which Mr. Zito was plaintiff's only
   listed counsel of record).
28

Case No. 2:16-CV-06554 JAK (SKx)

MOTION FOR EXCEPTIONAL CASE FINDING AND ATTORNEY FEES

IPR was time barred. As Wargaming explained to the PTAB, Exhibit 2019 supported Wargaming's position that no service had occurred in the UK, because Exhibit 2019 did not included signed and sealed copies of the complaint as is required under Federal Rule of Civil Procedure 4(a) and (b). Ponder Decl., Ex. L at Appx3275-79.

On December 1, 2017, GAT filed its response brief on the issue of whether the IPR was time barred. Ponder Decl., Ex. M. GAT admitted in briefing that "Ex. 2002 (Supplemental) *did not include a true copy of Exhibit A*." *Id.* at Appx3288. GAT admitted that that Mr. Talbot's purported service did not include signed and sealed summons due to a "printing error" (*id.* at Appx3291) but argued that service was nevertheless effective. GAT failed to explain how or why it had submitted Supplemental Exhibit 2002 and represented it to be the documents Mr. Talbot served, when it was not. GAT also argued for the first time that it had served Wargaming because Mr. Zito had mailed the complaint and summons to a Wargaming affiliate in Cyprus that was Wargaming's purported "alter ego." *Id.* at Appx3291-93. On December 1, 2017, GAT also filed a new declaration from its counsel Mr. Zito claiming that he had accomplished service by mail on Wargaming's affiliate in Cyprus. *Id.*, Ex. N.

On December 8, 2017 Wargaming filed a reply arguing in relevant part that neither of these attempts to effectuate service were successful because, first, a signed and sealed summons is a requirement for service of process and, second, because service by mail must be sent by the clerk of court and requires a signed receipt. Ponder Decl., Ex. O.

The PTAB agreed with Wargaming, and in its December 29, 2017 order denied Patent Owner's request that the proceeding be dismissed as time-barred, noting:

> Based on the record before us, we are not convinced that the evidence submitted is sufficient to show that effective service was achieved. In

1    particular, the evidence before us is not conclusive as to whether a proper

2    summons was included in the papers that purportedly were delivered to

3    Wargaming.net LLP.

4  Ponder Decl., Ex. P at p. 2.

5         Following the December 29, 2017 order, GAT continued to press its

6  unsupported position that the petition was time-barred by UK service, arguing in its

7  Patent Owner Response that:

8         "Mr. Talbot has testified that he served all documents including the

9         Hague Notice and Summary to Mr. Joannou. Ex.[1025], 31:14-21; 73:3-

10        23. While Ex. 2002 (Supplemental) did not include a true copy of Exhibit

11        A with the Notice and Summary, all served documents included in the

12        correct Exhibit A were of record before Mr. Talbot's deposition in a

13        combination of the documents shown in Ex. 2001 (Supplemental)

14        (Notice and Summary), and Ex. 2002 (Supplemental) (Summons,

15        Compliant, Cover Sheet, and Patent). And the declaration of Joseph Zito

16        (Ex[2021]) regarding the documents that he received from Legal

17        Language Services (Ex[2019]) corroborates that the Notice and

18        Summary were included in Exhibit A to Mr. Talbot's witness statement.

19  Ponder Decl., Ex. Q at Appx3313-14.  The Patent Owner Response contained no

20  new evidence to support GAT's position and did not address Mr. Talbot's testimony

21  regarding the underlying documents.

22        At the oral hearing, GAT asserted for the first time that "service was waived"

23  and "the party [Wargaming] entered an appearance in the case."  Ponder Decl., Ex.

24  R at Appx3110 at 35:21-25.  GAT's counsel explained that it was not relying on the

25  date of any waiver, however.  *Id*. at Appx3111 at 36:12–21.  Instead, GAT

26  contended that the agreement to waive service merely indicated that the parties had

27  no intent to dispute service.  *Id*. at Appx3111-12 at 36:22–37:3.

28        After an oral hearing, the PTAB addressed the issue of service for the third

time when it issued its Final Written Decision on September 7, 2018, finding the challenged claims unpatentable.  The PTAB again rejected GAT's time-bar argument, noting that "Included within Exhibit 2002 (Supplemental) is a summons signed by the clerk for the United States District Court for the Eastern District of Texas and bearing that Court's seal, ***but there appears to be no dispute that this signed and sealed summons was not part of the documentation delivered by Mr. Talbot to Mr. Joannou.***" (emphasis added)  Ponder Decl., Ex. S at Appx0012.

GAT appealed the Final Written Decision to the U.S. Court of Appeals for the Federal Circuit.  GAT yet again argued that Wargaming's IPR was time-barred based on the alleged UK service, but entirely failed to properly support its position. As the Federal Circuit explained, "GAT's opening brief devote[d] seven pages to the time-bar issue. Of those pages, almost six address GAT's principal argument that '[c]ompliance with the time-bar requirement is a condition precedent to institution of an IPR,'" but only devoted "one paragraph to its substantive argument that the UK service occurred more than a year before Wargaming filed the petition." *Game & Tech. Co. v. Wargaming Grp. Ltd.*, 942 F.3d 1343, 1350 (Fed. Cir. 2019). In that one paragraph, "GAT simply state[d] that it 'provided proof [of the UK service] and provided proof that Wargaming's counsel in writing on February 11, 2016 waived any defenses as to improper service.'" *Id.* (citing Appellant's Br. 22-23).

However, Wargaming was, once again, forced to respond to GAT's unsupported arguments.  Ponder Decl., Ex. U at 3-10, 33-46.  In Reply, GAT devoted another six pages to arguing that personal service in the U.K. and mail service to Cyprus had been effective because, according to GAT, the requirements of Rule 4 don't apply and need not be followed in the vast majority of cases, and in fact, only apply if a defendant contests service.  *See, e.g., Id.*, Ex. V at 4 ("FRCP Rule 4 relates to circumstances in which service is contested."); *see also id.* at 5. GAT also argued for the first time that Wargaming's counsel's email agreeing to

1  waive service constituted acceptance of service on the date of the email and/or that it

2  constituted waiver of service under Rule 4(d).  *Id.* at 2.

3      Wargaming's counsel was forced to prepare oral argument to respond to

4  GAT's new arguments raised for the first time in reply on appeal.  Ponder Decl.,

5  ¶ 59.  Oral argument before the Federal Circuit was held on September 30, 2019.

6  GAT's counsel spent his entire allocated time to arguing the time-bar issue.  GAT's

7  counsel again advanced and then retracted the argument—made for the first time in

8  GAT's reply on appeal—that Wargaming's e-mail qualified as waiver under Rule

9  4(d).  *Game & Tech.*, 942 F.3d at 1350-51; Oral Arg. at 8:54-9:35,

10  (http://oralarguments.cafc.uscourts.gov/de-fault.aspx?fl=2019-1171.mp3).

11  However, the Federal Circuit rejected GAT's improper litigation tactics, explaining

12  "[l]ike certain shapeshifting characters in Dungeons & Dragons, GAT's evolving

13  arguments are difficult to track."  *Id.* at 1351.  The Federal Circuit affirmed the

14  PTAB's determination that the IPR was not time barred including because GAT had

15  failed to adequately preserve or argue the merits of its position.  *Id.* at 1349-51.  The

16  Federal Circuit also affirmed the PTAB's determination that the '243 patent is

17  invalid.  *Id.* at 1351-52.

18  **III.   Legal Principles**

19      Under the Patent Act, "[t]he court in exceptional cases may award reasonable

20  attorney fees to the prevailing party." 35 U.S.C. § 285.  The Supreme Court has

21  established that "an 'exceptional' case is simply one that stands out from others with

22  respect to the substantive strength of a party's litigating position (considering both

23  the governing law and the facts of the case) or the unreasonable manner in which the

24  case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.,* 572 U.S.

25  545, 554 (2014).  In other words, exceptionality exists either where "there is an

26  unusual discrepancy in the merits of the positions taken by the parties," or where

27  "the losing party has litigated the case in an 'unreasonable manner.'" *Fair Wind*

28  *Sailing*, 764 F.3d 303, 314-15 (3rd Cir. 2014) (also explaining that the interpretation

1  of "exceptional" under the Patent Act "controls" interpretation under the Lanham

2  Act).

3      "District courts may determine whether a case is 'exceptional' in the case-by-

4  case exercise of their discretion, considering the totality of the circumstances."

5  *Octane Fitness*, 572 U.S. at 554. For example, "a case presenting either subjective

6  bad faith or exceptionally meritless claims may sufficiently set itself apart from

7  mine-run cases to warrant a fee award." *Id.* at 555.  Some factors courts may

8  consider in making an exceptionality determination include "frivolousness,

9  motivation, objective unreasonableness (both in the factual and legal components of

10  the case) and the need in particular circumstances to advance considerations of

11  compensation and deterrence." *Id.* at 554 n.6. The standard of proof is a

12  preponderance of the evidence. *SRI Int'l, Inc. v. Cisco Sys., Inc.*, 930 F.3d 1295,

13  1310 (Fed. Cir. 2019); *Octane Fitness*, 572 U.S. at 557 ("Section 285 demands a

14  simple discretionary inquiry: it imposes no specific evidentiary burden.")

15      Courts have found that "exceptional" allegations that relate conduct in

16  proceeding before the PTO, including IPR proceedings are proper.  The Federal

17  Circuit has repeatedly supported an award of attorneys' fees for proceedings before

18  the PTO.

19      As one court recently explained: *Inter partes* review is a legal proceeding

20  before the PTO's Patent Trial and Appeal Board (PTAB) whereby a petitioner seeks

21  cancellation of some or all of the claims of a patent, either on novelty or

22  nonobviousness grounds, based on prior art found in patents or printed publications.

23  35 U.S.C. § 311(b). Congress created IPR in 2011 to be a "quick and cost effective

24  alternative[] to litigation." H.R. Rep. No. 112–98, pt. 1, at 48 (2011).  "'[C]ourts

25  have awarded attorneys' fees under § 285 for legal services rendered in connection

26  with proceedings before the PTO where doing so was reasonably necessary or

27  related to the underlying patent lawsuit.'" *Am. Vehicular Scis. LLC v. Autoliv, Inc.*,

28  405 F. Supp. 3d 728, 737 (E.D. Mich. 2019) (citing cases including *PPG Indus., Inc.*

*v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1568-69 (Fed. Cir. 1988));
*Chaffin v. Braden*, No. 6:14-0027, 2016 WL 5372540, at *2 (S.D. Tex. Sept. 26,
2016)).  Specifically, "'[c]ourts typically awarded attorneys' fees associated with
PTO proceedings either where there was a stay of the related district court case,
such that the PTO proceedings effectively took the place of the federal court
litigation,'" *id.* (citing, e.g., *PPG Indus.*, 840 F.2d at 1569; *Deep Sky Software, Inc.
v. Southwest Airlines Co.*, No. 10-cv1234, 2015 WL 10844231, at *2 (S.D. Cal.
Aug. 19, 2015)), "'or where the court determined the PTO's decision played a
central role in determining the outcome of the federal court case.'" *Id.* (citing, e.g.,
*Howes v. Med. Components, Inc.*, 761 F.Supp. 17 1193, 1198 (E.D. Pa. 1990); *Scott
Paper Co. v. Moore Bus. Forms, Inc.*, 604 F.Supp. 835, 838 (D. Del. 1984)); *see
also, e.g., Large Audience Display Sys., LLC v. Tennman Prods., LLC*, No. CV 11-
03398-R, 2017 U.S. Dist. LEXIS 62617, *6 (C.D. Cal. Apr. 10, 2017) (awarding
fees based on plaintiff's conduct that included objectively weak constructions
argued to the PTO).  As another court has explained, "[t]he United States Supreme
Court uses a 'but for' causation standard in adjudicating attorneys' fees under
federal statutes" and therefore fees for activities before the PTO are appropriate
where, but for the litigation, such fees would not have been incurred.  *Munchkin,
Inc. v. Luv N' Care, Ltd.*, No. CV 13-06787 JEM, 2018 U.S. Dist. LEXIS 223150,
*19-20 (C.D. Cal. Dec. 27, 2018) ("Munchkin contends that LNC should not
recover its fees for the IPR proceeding and subsequent Federal Circuit appeal
because those proceedings did not occur in this case. The Court disagrees;"
awarding defendant such fees because "[b]ut for the filing of the patent infringement
claim in this case, LNC would not have incurred attorneys' fees and costs for the
IPR and Federal Circuit appeal.")

 Finally, the court may award fees generated on appeal.  *Inventor Holdings,
LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1380 (Fed. Cir. 2017) (addressing
fees from an appeal); *Therasense, Inc. v. Becton Dickinson & Co.*, 745 F.3d 513,

1   516–517 (Fed. Cir. 2014).

2   Here, as in *PPG Indus.* and *Deep Sky*, the Court ordered a stay of litigation

3   pending the PTO proceedings, and thus the IPR proceedings "essentially

4   substituted" for the court's work. *See PPG Indus.*, 840 F.2d at 1569 ("Celanese is

5   entitled to reasonable attorney fees based upon the premise that the reissue

6   proceedings substituted for the district court litigation."); *Deep Sky*, 2015 WL

7   10844231, at *2-3 (allowing defendant to recover fees for the reexamination

8   proceedings before the PTO because those proceedings "essentially substituted for

9   work that would otherwise have been done before this court"). Moreover, as in

10  *Munchkin*, but for this litigation, the IPR and related fees would never have

11  occurred. *Munchkin*, 2018 U.S. Dist. LEXIS 223150, *19-20.

12  **IV.   Argument**

13          **A.      Wargaming is the "Prevailing Party" For All Purposes**

14          Pursuant to the Parties' proposed judgment, on March 31, 2020, the Court

15  entered judgment in Wargaming's favor, dismissed all of GAT's claims with

16  prejudice and determined that Wargaming is the prevailing party. Dkt. 59.

17  Wargaming is therefore the prevailing party in this action, including for purposes of

18  Section 285. *See e.g., B.E. Tech., L.L.C. v. Facebook, Inc.*, 940 F.3d 675, 677 (Fed.

19  Cir. 2019) ("We interpret the term [prevailing party] consistently between different

20  fee-shifting statutes, and between Rule 54(d) and 35 U.S.C. § 285," citing *CRST*

21  *Van Expedited, Inc. v. EEOC*, 136 S. Ct. 1642, 1646 (2016).) Thus, in *B.E. Tech.*,

22  the Federal Circuit held that where Facebook had obtained cancellation of the

23  asserted claims in IPR, it was the prevailing party because it "obtained the outcome

24  it sought via the mootness dismissal; it rebuffed B.E.'s attempt to alter the parties'

25  legal relationship in an infringement suit." *B.E. Tech.*, 940 F.3d at 679; *see also*

26  *Inland Steel Co. v. LTV Steel Co.*, 364 F.3d 1318, 1321 (Fed. Cir. 2004) (where

27  district court had stayed the case pending reexam proceedings which resulted in

28  cancellation of the patents, the defendant was the prevailing party; and remanding

1   for a determination of whether the case was exceptional under Section 285).

2        In this action, as in the foregoing cases, Wargaming obtained the outcome it

3   sought and "rebuffed [plaintiff's] attempt to alter the parties' legal relationship in an

4   infringement suit." *B.E. Tech*, 940 F.3d at 679.  Wargaming is the prevailing party.

### B.   **Wargaming Is Entitled to Attorneys' Fees Here**

#### 1.   *GAT's Misconduct, Lack of Candor and Unreasonable Manner in which it Litigated the Issue of Service Are Exceptional and Warrant an Award of Fees*

8        GAT's misconduct and unreasonable manner in which it litigated the issue of

9   whether Wargaming's petition for IPR was time-barred warrants an exceptional case

10  finding here.

11       First, GAT submitted false documents claiming to show that GAT had

12  complied with Rule 4 and properly served Wargaming in the UK, and seeking to

13  deprive Wargaming of its right to proceed with the IPR.  GAT filed its Patent Owner

14  Preliminary Response on July 12, 2017 claiming that Wargaming was served in

15  compliance with Rule 4(f)(1) in the UK, and asking Board to dismiss the petition as

16  time-barred.  However, GAT's only support for that statement—the original version

17  of PTAB Exhibit 2002 (Talbot's Witness Statement)—lacked the exhibits showing

18  what was allegedly served.  After Wargaming pointed out this was a problem, GAT

19  filed a ***false exhibit***[5] purporting to be the documents that were served in the UK.

20  Ponder Decl., Ex. D.  The exhibit was falsified in a material way – it included copies

---

[5] It is not an exaggeration to say this was a false exhibit.  Not only did GAT's process server testify that the documents included in Supplemental Exhibit 2002 were not what he served, GAT also admitted in briefing that "Ex. 2002 (Supplemental) ***did not include a true copy of Exhibit A***." Ponder Decl., Ex. M at Appx3288; Ex. Q at Appx3313-14.  Furthermore, GAT's counsel admitted on November 15, 2017 that he had only "recently" obtained the Talbot Witness Statement from storage, months after he submitted Supplemental Exhibit 2002 to the PTAB on July 28, 2017, purportedly attaching the Talbot Witness Statement and its exhibit.  Thus, GAT and its witness have admitted that Supplemental Exhibit 2002 was false.

of the summonses signed and sealed by the Court, which were not present in the true version of the exhibit. *Id*. at Appx1754-55, Appx1756-57.  The PTAB ordered an entire separate round of briefing premised on GAT's false, Supplemental Exhibit 2002 purporting to show that Wargaming had been properly served in the UK under Rule 4.  Ponder Decl., Ex. E at Appx3043-45; Ex. F at 4.  Wargaming had to travel to the UK to depose Mr. Talbot, GAT's process server, to obtain his testimony that Supplemental Exhibit 2002 was "most definitely not" the documents he served.[6] Ponder Decl., Ex. G at Appx1615-17 at 73:3-10, 74:25-75:9.

However, GAT next attempted to establish service by filing a "Notice of Service" *in this Court* on November 10, 2017 misleadingly claiming that on February 11, 2016, Wargaming's counsel "*confirmed service* [on] their client in the UK and in Cypr[us]…".  Dkt. 37 at 2.  GAT then submitted a copy of the Notice of Service to the PTAB invoking the imprimatur of this Court to support his misleading claim that he had complied with this Court's service requirements. *See* Ponder Decl., Exs. J, K at Appx2059, ¶ 3 ("I recently obtained the original documents from storage. I then filed a copy of the documents with the U.S. District Court for the Central District of California on November 10, 2017, and served these documents on counsel for Wargaming on November 10, 2017. GAT Exh 2020 is a copy the documents that were filed and served.").  GAT also filed Exhibit 2019, which GAT's counsel asserted was "a true copy of the letter and attachments" he received as proof of service which he had only "recently" obtained from storage. *Id*. The Talbot Witness Statement filed in the Notice of Service with this Court and Exhibit 2019 lacked any signed and sealed summons.  Dkt. 37-1 at 7-8, 21-22;

---

[6] GAT unreasonably and improperly caused Wargaming additional expense by noticing the deposition of Wargaming's former agent, Mr. Joannou, and abruptly canceling the deposition only two days before.  Wargaming had already incurred the expense of dispatching two lawyers to London for covering the back-to-back depositions of Mr. Talbot and Mr. Joannou.  Ponder Decl., ¶ 41.

MOTION FOR EXCEPTIONAL CASE FINDING AND ATTORNEY FEES

1    Ponder Decl., Ex. I at Appx1976-77, Appx1990-91.

2        Fortunately, Wargaming was able to refute GAT's new misrepresentation that

3    Wargaming had "confirmed service" because Wargaming had sent an email to Mr.

4    Zito on February 11, 2016 where Wargaming unambiguously stated that service had

5    not been properly effected.  Ponder Decl., Ex. H (Ex. 1027).

6        Nevertheless, Wargaming still had to contend with GAT's continued

7    claims—now based on the assertions in GAT's "Notice of Service" filed in this

8    Court—that GAT had properly served Wargaming in the UK.  GAT claimed it was

9    a "mere procedural printing error that caused the seal and signature to be missing

10   from the copy of the summons" purportedly served in the UK.  Ponder Decl., Ex. M

11   at Appx3291.  However, this claim of printing error is also demonstrably false,

12   because the summonses that were filed with the "Notice of Service" and PTAB

13   Exhibit 2019 bear the ECF stamp indicating that they were part of document 1 on

14   the Court's docket.  Thus, they were *not* the signed and sealed summons issued by

15   the Court, which is document 3 on the Court's docket.  *Compare* Dkt. 3 *with* Dkt.

16   37-1 at 7-8, 21-22 and Ponder Decl., Ex. I at Appx1976-77 and Appx1990-91.

17   GAT's counsel never made any attempt to serve Wargaming with a signed and

18   sealed summons as required by Rule 4(a) and (b).  GAT never provided any

19   explanation of how Supplemental Exhibit 2002, containing two signed and sealed

20   copies of the summons (Dkt. 3), came to be submitted to the PTAB.

21       In December 2017, nearly six months after filing its Patent Owner

22   Preliminary Response claiming that Wargaming's IPR was time barred based on

23   GATs purported service in the UK, and one month after the deadline for Wargaming

24   to take deposition discovery concerning service, GAT submitted a new declaration

25   and claimed for the first time that the IPR was time barred based on purported mail

26   service to a Wargaming affiliate in Cyprus.  Ponder Decl., Ex. N at Appx2078-79.

27   Thus, Wargaming was forced to respond to GAT's new argument in reply and

28   without discovery.  Ponder Decl., Ex. O at Appx3299-3300.

MOTION FOR EXCEPTIONAL CASE FINDING AND ATTORNEY FEES

In all, GAT forced Wargaming and the PTAB to address the issue of service three times, first in the initial briefing prior to the PTAB's decision to institute the IPR, then in discovery and a special round of briefing and decision on the service issue, and finally in briefing and oral hearing in advance of the PTAB's final written decision.  Each time, the PTAB decided that the IPR was not time-barred.  A critical factor for the PTAB was that GAT had failed to adhere to the Rule 4(a) and (b) requirement that it serve Wargaming with a summons signed and sealed by the Court.  Ponder Decl., Ex. S at Appx0012-13.  The PTAB also rejected GAT's claim that "Wargaming's counsel 'confirmed service [of] their client in the UK and in Cypr[us]'" because that claim "conflicts with a contemporaneous email dated February 11, 2016, from counsel for Wargaming to counsel for Game and Technology stating, 'we still do not believe that service was properly effected on either Wargaming entity.'" *Id.* at Appx0015-16 (citing Ex. 1027).  Thus, but for Wargaming's persistence in obtaining Mr. Talbot's testimony proving that GAT's Supplemental Exhibit 2002 was false, and Wargaming's evidence that Wargaming's counsel had not "confirmed service" as GAT incorrectly claimed in its "Notice of Service" filed in this Court, Wargaming would have been deprived of its right to petition the PTO to institute *inter partes* review.

Nevertheless, even after the PTAB's final written decision, GAT continued to contend that service had occurred, and filed an appeal to the Federal Circuit.  Once again, GAT pursued a pattern of unwarranted conduct that increased the costs and burdens to Wargaming.  GAT devoted seven pages of its opening brief to arguing that the IPR was time barred based on the purported service in the UK, but failed to properly support its position.  Ponder Decl., Ex. T at 3-8, 20-27; *Game & Tech.*, 942 F.3d at 1350.  Nevertheless, Wargaming had to address GAT's arguments.  *Id.*, Ex. U at 3-10, 33-46.  Then for the first time ***in reply on appeal***, GAT argued that Wargaming's counsel's email agreeing to waive service constituted acceptance of service on the date of the email and/or that it constituted proper waiver of service

MOTION FOR EXCEPTIONAL CASE FINDING AND ATTORNEY FEES

under Rule 4(d).  *Id.*, Ex. V at 2; *Game & Tech.*, 942 F.3d at 1350-51 (describing GAT as presenting "evolving arguments" that were "difficult to track" and were "[l]ike certain shapeshifting characters in Dungeons & Dragons.")  Wargaming's counsel once again had to prepare to meet GAT's ever shifting and misleading arguments, increasing Wargaming's costs.  Finally, in oral argument to the Federal Circuit, GAT admitted the only waiver under Rule 4 is the waiver provided under Rule 4(d), and then admitted that there had been no waiver under Rule 4(d).   Oral Arg. at 8:54-9:35 (http://oralarguments.cafc.uscourts.gov/de-fault.aspx?fl=2019-1171.mp3).

GAT's pattern of misconduct, lack of candor and unreasonable litigation tactics surrounding the issue of service are exceptional.  Among other things: (i) GAT filed false evidence purporting to show service of a signed and sealed summons on Wargaming in compliance with Rule 4 when none had been served; (ii) GAT forced Wargaming to depose GAT's process server in London to obtain the process server's testimony that GAT's evidence of service was "most definitely not" what he served, and after this testimony GAT did not stop relying on the alleged UK service; (iii) GAT filed a deceptive "Notice of Service" in this Court in an attempt to claim that Wargaming had "confirmed service" and invoking the imprimatur of this Court to try to mislead the PTO into holding that proper service had occurred; (iv) GAT repeatedly ambushed Wargaming with new arguments and after-the-fact declarations concerning service (including declarations filed after deposition discovery was closed); and (v) GAT went as far as to raise entirely new arguments *in reply on appeal* to the Federal Circuit, forcing Wargaming to spend additional time responding to GAT's last-minute and improperly raised arguments.

"[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position … or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 554.  Furthermore, unreasonable litigation conduct need not be sanctionable to

1   support award of fees.  *Id*. at 555 (sanctionable conduct is "not the appropriate

2   benchmark.")  Rather, a court may award fees "in the rare case in which a party's

3   unreasonable conduct — while not necessarily independently sanctionable — is

4   nonetheless 'exceptional' as to justify an award of fees."  *Id.*  "[D]istrict courts can

5   consider a non-exclusive list of factors, including frivolousness, motivation,

6   objective unreasonableness and the need to advance considerations of compensation

7   and deterrence."  *Munchkin*, 2018 U.S. Dist. LEXIS 223150, *6 (citing *Octane*

8   *Fitness*, 572 U.S. at 554, n. 6).

9        GAT's conduct is "exceptional" and "stands out" by any definition, including

10   under Section 285, and courts have found cases exceptional based on similar types

11   of unreasonable conduct.  *See, e.g., AdjustaCam, LLC v. Newegg, Inc*., 861 F.3d

12   1353 (Fed. Cir. 2017) (reversing denial of attorney's fees under Section 285 where

13   defendant engaged in "dubious behavior" that included serving after-the-fact

14   declarations, serving new expert reports the day of the expert's depositions, and the

15   filing of new supplemental declarations with new infringement arguments on

16   appeal, without disclosing them as new on appeal); *Large Audience Display Sys*.,

17   2017 U.S. Dist. LEXIS 62617, *4 ("Plaintiff's corporate formation in relation to the

18   Motion to Transfer, Plaintiff's positions taken before the PTO, and Plaintiff's use of

19   a privileged email in opposition to the Motion for Attorney's Fees render this case

20   exceptional.")

21        GAT's actions and tactics caused Wargaming to incur over $100,000 of

22   needless litigation fees and expenses, including travel to London to obtain testimony

23   to refute GAT's false evidence.  As explained in Section IV.C below, Wargaming is

24   seeking ***only*** a portion those fees directly attributable to GAT's exceptional conduct

25   litigating the issue of service.  Such fees are properly awarded in this case.

26        **2.   *It Is Proper to Award Wargaming's Requested Fees under***
27        ***Section 285***

28        GAT argues that the Court should not award Section 285 fees because this

1   case was stayed before any substantive activity occurred and because Wargaming

2   allegedly should have sought fees from the PTAB.  Neither claim is correct.

3         First, GAT's unreasonable actions and tactics intimately concern this Court,

4   invoked this Court's authority, and occurred partially in this Court and in the appeal

5   to the Federal Circuit.  GAT's course of conduct was intended to convince the

6   PTAB that it had complied with the requirements of Federal Rule of Civil Procedure

7   4 by properly serving Wargaming with this Court's summons and properly invoking

8   this Court's jurisdiction more than one year before Wargaming petitioned for *inter*

9   *partes* review.  The key issue was what occurred with this Court's process *prior to*

10  the PTAB proceedings.  Moreover, GAT's actions included passing off false case

11  initiating documents and service papers *from this case*, filing a materially

12  misleading "Notice of Service" in this Court, and unreasonably litigating the appeal

13  in the Federal Circuit.  Thus, GAT's conduct is the proper concern of this Court.

14        Second, Courts regularly award Section 285 fees for activity in the PTO,

15  particularly where, as here, the Court ordered a stay of the litigation and PTAB

16  proceedings substituted for litigation in the district court.  *See PPG Indus.*, 840 F.2d

17  at 1569; *Deep Sky*, 2015 WL 10844231, at *2-3; *see also, e.g., Large Audience*

18  *Display Sys.*, 2017 U.S. Dist. LEXIS 62617, *4-5 (awarding fees based on plaintiff's

19  conduct that included objectively weak constructions argued to the PTO);

20  *Munchkin*, 2018 U.S. Dist. LEXIS 223150, *19-20 (awarding fees to defendant

21  incurred in an IPR proceeding and subsequent Federal Circuit appeal because they

22  would not have been incurred but for the institution of the litigation).[7]  In other

23  words, the fact that there was a stay of the litigation and relevant activity in the PTO

24  displaced activity in this Court are factors that weigh ***in favor of*** awarding fees for

25  activity in the PTO, not against awarding such fees.  *Ibid.*

26  _____

27  [7]  Moreover, as in *Munchkin*, but for this case, the IPR and related fees would never
    have occurred, and for this reason as well, it is appropriate for the Court to award
28  fees for activity in the PTO.  *Munchkin*, 2018 U.S. Dist. LEXIS 223150, *19-20.

1    Third, Wargaming is not restricted to seeking fees from the PTAB.  This

2    Court, not the PTAB, is vested with the authority to award fees under Section 285,

3    and is the only tribunal that can award fees in connection with the appeal.  35 U.S.C.

4    § 285 ("*The court* in exceptional cases may award reasonable attorney fees to the

5    prevailing party;" emphasis added.)  Furthermore, the Supreme Court made clear

6    that conduct need not be sanctionable to be exceptional under Section 285.  *Octane*

7    *Fitness*, 572 U.S. at 555.  By contrast, the PTAB is permitted to "impose a *sanction*

8    against a party for *misconduct*."  37 C.F.R. § 42.12 (emphasis added), § 37 C.F.R.

9    42.11(d) (permitting Rule 11-type sanctions for violation of duty of candor).  Thus,

10   the PTAB's ability to impose sanctions for misconduct are more limited than, and

11   does not displace. this Court's statutory authority to award attorney's fees in

12   exceptional cases.  Additionally, Wargaming seeks fees for work refuting GAT's

13   belated and improper arguments concerning service in the appeal in the Federal

14   Circuit.  The PTAB cannot award such fees, but it is appropriate for this Court to do

15   so.  *Inventor Holdings*, 876 F.3d at 1380; *Therasense*, 745 F.3d at 516–517.

16   Finally, in the one case GAT cites (Dkt. 53 at 5), the defendants argued the

17   case was exceptional based on the objective weakness of plaintiff's patent validity

18   arguments.  *Am. Vehicular Scis.*, 405 F. Supp. 3d at 734.  The court believed that the

19   PTAB was better placed to determine fees because the PTAB "was so deeply

20   ensconced in the merits of the respective positions taken in the IPR proceedings and

21   [] has a particular expertise in evaluating the arguments made with respect to prior

22   art, priority and presumably validity."  *Id.* at 741.  By contrast, in this case, GAT's

23   unreasonable conduct concerned the issue of whether it had effected proper service

24   on Wargaming under Federal Rule of Civil Procedure 4, which is an issue with

25   which the PTAB has little proficiency but with which this Court has particular

26   expertise.  Furthermore, as explained above, GAT's misconduct involved

27   misleading filings in this Court and unreasonable litigation tactics in the Federal

28   Circuit, actions for which the PTAB cannot award fees.  This Court, not the PTAB,

1  is the proper tribunal to determine Wargaming's request for fees under Section 285.

2  **C.    Amount of Fees Sought Here Is Limited in Scope and Time, and Is Reasonable**

3

4  As shown in the attachments and declarations filed herewith, Wargaming is

5  only seeking its fees directly connected to rebutting GAT's improper and

6  unreasonable tactics in pursuing its claim that the IPR was time-barred.  *See*

7  Attachments 1 & 2 hereto; Ponder Decl., ¶¶ 14-30, Ex. B.  In particular, Wargaming

8  seeks its fees for preparing for and traveling to London to defend the Joannou

9  deposition that GAT cancelled two days before the deposition, preparing for and

10  taking the Talbot deposition to rebut GAT's false exhibit, preparing its briefing to

11  the PTAB on the issue of service, and preparing its briefing and oral argument on

12  the issue of service before the Federal Circuit.  Attachments 1 & 2 hereto; Ponder

13  Decl., ¶¶ 14-27, Ex. B.

14  In determining whether attorneys' fees are reasonable, courts adopt a

15  "lodestar" approach, whereby the Court will multiply the number of hours spent on

16  the litigation by the reasonable hourly rate. *See Blanchard v. Bergeron*, 489 U.S. 87

17  (1989); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  In patent litigation, "the

18  reasonable rate may be greater than in other areas of practice because of the

19  expertise required to litigate cases, because higher fees are customary in that

20  specialty, and because of the desirability and arguable necessity of seeking counsel

21  outside of the immediate geographic region." *Automotive Techs. Int'l, Inc. v.*

22  *Siemens VDO Auto. Corp.*, 744 F. Supp. 2d 646, 655 (E.D. Mich. 2010).  The

23  reasonableness of the hourly rate for attorneys in patent litigation cases can be

24  proven by reliance on the Economic Survey published by the American Intellectual

25  Property Law Association (the "AIPLA Data"). *See Mathis v. Spears*, 857 F.2d 749,

26  755-56 (Fed. Cir. 1988), *Microstrategy Inc. v. Crystal Decisions, Inc*., No. 03-1124-

27  MPT, 2008 WL 782842 at *6 (D. Del. March 25, 2008).

28  Wargaming's counsel's fees are comparable to or lower than the rate

customarily charged by counsel for this type of work, and the prevailing rate charged in the community for similar services, including the rate charged by GAT's counsel.  Ponder Decl., ¶¶ 3-13.  In particular, the attorneys' fees sought by Defendants are consistent with the 2019 AIPLA Data litigation costs and billing rates for IP attorneys at large law firms.  *Id.*, ¶¶ 11-13.

Finally, GAT seeks $ 16,506.17 in disbursements and other expenses related to the work performed by Wargaming's counsel in relation to GAT's unreasonable conduct.  These expenses are detailed in the Ponder declaration and are also recoverable.  Ponder Decl., ¶¶ 31-36; *Cent. Soya Co. v. Geo A. Hormel & Co.*, 723 F.2d 1573, 1578 (Fed. Cir. 1983) ("[W]e conclude that the award of expenses was properly within the scope of § 285.").

Dated:  April 14, 2020         SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

                               By     _____
                                            */s/ Christopher S. Ponder*
                                        HARPER S. BATTS
                                        CHRISTOPHER S. PONDER
                                        JEFFREY LIANG
                                        Attorneys for
                                        WARGAMING GROUP LIMITED

1

## ATTACHMENT 1

| Table 1 | | | |
|---|---|---|---|
| *Task 1:  Investigate Service Arguments in the Patent Owner's Preliminary Response (POPR)* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| H S Batts (Partner) | $625/hour | 9.4 | $5,875.00 |
| C S Ponder (Special Counsel) | $450/hour | 2 | $900.00 |
| J Liang (Associate) | $450/hour | 7.4 | $3,330.00 |
| **Fee Request for Task 1** | | **18.8** | **$10,105.00** |
| *Task 2:  Analysis and Advice on UK Service Procedure and Law* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| N Coulson (Partner) | $625/hour | 1.4 | $875.00 |
| K Unni (Associate) | $450/hour | 11.5 | $5,175.00 |
| **Fee Request for Task 2** | | **12.9** | **$6,050.00** |
| *Task 3:  Work on Reply to POPR Service Arguments* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| H S Batts (Partner) | $625/hour | 9.7 | $6,062.50 |
| C S Ponder (Special Counsel) | $450/hour | 2 | $900.00 |
| J Liang (Associate) | $450/hour | 2 | $900.00 |
| **Fee Request for Task 3** | | **13.7** | **$7,862.50** |
| *Task 4:  Analyze Institution Decision as to Service* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| H S Batts (Partner) | $625/hour | 1.5 | 937.50 |
| **Fee Request for Task 4** | | **1.5** | **937.50** |
| *Task 5:  Service Discovery in London* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| H S Batts (Partner) | $625/hour | 23.6 | $14,750.00 |
| C S Ponder (Special Counsel) | $450/hour | 17.6 | $7,920.00 |
| **Fee Request for Task 5** | | **41.2** | **$22,670.00** |
| *Task 6:  Work on Post-Institution Opening Service Brief* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| H S Batts (Partner) | $625/hour | 1.9 | $1,187.50 |
| C S Ponder (Special Counsel) | $450/hour | 19.9 | $8,955.00 |
| **Fee Request for Task 6** | | **21.8** | **$10,142.50** |
| *Task 7:  Work on Post-Institution Reply Service Brief* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| H S Batts (Partner) | $625/hour | 5.9 | $3,687.50 |
| C S Ponder (Special Counsel) | $450/hour | 18.3 | $8,235.00 |
| **Fee Request for Task 7** | | **24.2** | **$11,922.50** |

| Table 1 | | | |
|---|---|---|---|
| *Task 8:  Work on Service Issues for Reply ISO Petition* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| C S Ponder (Special Counsel) | $450/hour | 4 | $1,800.00 |
| **Fee Request for Task 8** | | **4** | **$1,800.00** |
| *Task 9:  Prepare for Arguing Service Issues* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| C S Ponder (Special Counsel) | $450/hour | 19.8 | $8,910 |
| **Fee Request for Task 9** | | 19.8 | $8,910 |
| *Task 10:  Argue Service Issues* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| C S Ponder (Special Counsel) | $450/hour | 7 | $3,150.00 |
| **Fee Request for Task 10** | | **7** | **$3,150.00** |
| *Task 11:  Briefing Service Issue on Appeal* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| H S Batts (Partner) | $625/hour | 7.3 | $4,562.50 |
| C S Ponder (Special Counsel) | $450/hour | 63 | $28,350.00 |
| J Liang (Associate) | $450/hour | 0.8 | $360.00 |
| **Fee Request for Task 11** | | **71.1** | **$33,272.50** |
| *Task 12:  Preparing for Appellate Argument on Service* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| H S Batts (Partner) | $625/hour | 11.9 | $7,437.50 |
| C S Ponder (Special Counsel) | $450/hour | 13.3 | $5,985.00 |
| **Fee Request for Task 12** | | **25.2** | **$13,422.50** |
| *Task 13:  Appellate Argument on Service* | | | |
| **Attorney** | **Rate** | **Hours** | **Fee** |
| H S Batts (Partner) | $625/hour | 5.5 | $3,437.50 |
| **Fee Request for Task 13** | | **5.5** | **$3,437.50** |

## **ATTACHMENT 2**

| Table 2 | | | | | |
|---|---|---|---|---|---|
| **Attorney** | **Rate** | **Hours by Task** | | | **TOTALS** |
| H S Batts (Partner) | $625/ hour | 01 - Investigate Service Arguments in the Patent Owner's Prelim. Response | | 9.4 | **Hours: 76.7 Total: $47,937.50** |
| | | 03 - Work on Reply to POPR Service Arguments | | 9.7 | |
| | | 04 - Analyze Institution Decision as to Service | | 1.5 | |
| | | 05 - Service Discovery in London | | 23.6 | |
| | | 06 - Work on Post-Institution Opening Service Brief | | 1.9 | |
| | | 07 - Work on Post-Institution Reply Service Brief | | 5.9 | |
| | | 11 - Briefing Service Issue on Appeal | | 7.3 | |
| | | 12 - Preparing for Appellate Argument on Service | | 11.9 | |
| | | 13 - Appellate Argument on Service | | 5.5 | |
| C S Ponder (Special Counsel) | $450/ hour | 01 - Investigate Service Arguments in the Patent Owner's Prelim. Response | | 2 | **Hours: 166.9 Total: $75,105.00** |
| | | 03 - Work on Reply to POPR Service Arguments | | 2 | |
| | | 05 - Service Discovery in London | | 17.6 | |
| | | 06 - Work on Post-Institution Opening Service Brief | | 19.9 | |
| | | 07 - Work on Post-Institution Reply Service Brief | | 18.3 | |
| | | 08 - Work on Service Issues for Reply ISO Petition | | 4 | |
| | | 09 - Prepare for Arguing Service Issues | | 19.8 | |
| | | 10 - Argue Service Issues | | 7 | |
| | | 11 - Briefing Service Issue on Appeal | | 63 | |
| | | 12 - Preparing for Appellate Argument on Service | | 13.3 | |
| J Liang (Associate) | $450/ hour | 01 - Investigate Service Arguments in the Patent Owner's Prelim. Response | | 7.4 | **Hours: 10.2 Total: $4,590.00** |
| | | 03 - Work on Reply to POPR Service Arguments | | 2 | |
| | | 11 - Briefing Service Issue on Appeal | | 0.8 | |

| | | | | |
|---|---|---|---|---|
| <u>N Coulson</u><br>(Partner) | $625/<br>hour | 02 - Analysis and Advice on UK Service<br>Procedure and Law | 1.4 | **Hours: 1.4**<br>**Total:**<br>**$875.00** |
| <u>K Unni</u><br>(Associate) | $450/<br>hour | 02 - Analysis and Advice on UK Service<br>Procedure and Law | 11.5 | **Hours: 11.5**<br>**Total:**<br>**$5,175.00** |

ATTACHMENT 2 TO MOTION FOR ATTORNEY FEES