Kenneth A. Reed
(karoffice@kennethreedlaw.net)
LAW OFFICES OF KENNETH A. REED
406 W. 4th Street
Santa Ana, California 92701
Telephone:  877-755-0048

Joseph J. Zito (pro hac vice)
(jzito@dnlzito.com)
Telephone:   202-466-3500
Luiz Felipe Oliveira (pro hac vice)
(loliveira@dnlzito.com)
DNL ZITO
1250 Connecticut Ave., NW Suite 200
Washington D.C.  20036

Attorneys for Plaintiff
GAME AND TECHNOLOGY CO., LTD.

## UNITED STATES DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GAME AND TECHNOLOGY CO., LTD.,<br>    Plaintiff,<br><br>v.<br><br>WARGAMING GROUP LIMITED,<br>    Defendant. | Civil Case No.: 2:16-cv-06554 JAK (SKx)<br><br>**OPPOSITION TO MOTION FOR FEES**<br><br>Date:   July 20, 2020<br>Time:   8:30 am<br>Judge : Honorable John A. Kronstadt<br>Court:  10B |

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    THE IPR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

IV.     WARGAMING'S FALSE ASSERTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        a.  Exhibit 202 Supplemental . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        b.  The February 11, 2016 Agreement of Counsel . . . . . . . . . . . . . . . . . . . . . . . . 12

V.      THE EXCEPTIONAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        a.  Wargaming's Exceptionality Assertions are Without Merit . . . . . . . . . . . . . 15

        b.  GAT Did Not Have a Weak Position on Service . . . . . . . . . . . . . . . . . . . . . . . 16

        c.  GAT Did Not Engage in any Unreasonable Conduct . . . . . . . . . . . . . . . . . . . 17

        d.  Any Fee Request Should Have Been Brought at the PTAB . . . . . . . . . . . . . . 17

VI.     WARGAMING'S FEE AMOUNT IS NOT REASONABLE . . . . . . . . . . . . . . . . . . . . 19

VII.    EXPENSES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

VIII.   WARGAMING'S INAPPROPRIATE PERSONAL ATTACKS . . . . . . . . . . . . . . . . . 22

IX.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*American Vehicular Sciences LLC v. Autoliv, Inc.*
   305 F. Sup. 3d 728, 737 (E.D. Mich. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13,16, 18

*H-W Technology* 2014 WL 437-8750, at *7  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Hockeyline, Inc. v. STATS LLC*
   13-cv-1446, 2017 WL 1743022, at *3 (S.D.N.Y. Apr. 27, 2017) . . . . . . . . . . . . . . . . 14

*Icon Health & Fitness, Inc. v. Octane Fitness*
   *LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Octane Fitness*  572 U.S. at 545 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*PPG Indus., Inc. v. Celanese Polymer Specialties Co*
   840 F.2d 1565, 1568 (Fed. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*Serrano IV,* 32 Cal.3d at 635, 186 Cal.Rptr. 754, 652 P.2d 985 . . . . . . . . . . . . . . . . . . . . . 20

*SFA Sys., LLC v. Newegg Inc.* 793 F.3d 1344, 1348 (Fed. Cir. 2015) . . . . . . . . . . . . . . . . . . 14

*Stone Basket ,LLC v. Cook Med. LLC* 892 F.3d 1175 at 1181 (Fed. Cir. 2017) . . . . . . . 15, 16, 19

*Sundance v. Municipal Court,* 192 Cal.App.3d 268, 273-274, 237 Cal.Rptr. 269 (1987) . . . . . 20

*Thryv, Inc., fka Dex Media, Inc. V. Click-to-call Technologies, LP, et al.*  USSC on
   Certiorari to the United States Court of Appeals for the Federal Circuit
   No. 18–916. (Argued December 9, 2019—Decided April 20, 2020) . . . . . . . . . . . . . . . . 1

## I.  INTRODUCTION

Wargaming was physically served on December 10, 2015 (Ex. D)[1] and waived any defenses to improper service, in writing, on February 11, 2016. (Ex. H)  Wargaming was thus fully and properly "served" at least as early as February 11, 2016.  Further, because the action of waiving defenses of any improper service (such as a missing stamp) relates back to the date of physical service, Wargaming's service was effective *nunc pro tunc* on December 10, 2015.

Wargaming's IPR request was filed untimely on March 13, 2017 and this issue was properly raised at the PTAB.[2]

As explained herein below, Wargaming, knowing the above to be correct, choose to misdirect, obfuscate and confuse the PTAB, first by falsely denying that any physical service had occurred, (see: Ex. W, Wargaming's IPR Request p. 73)  "Wargaming.net never received a copy of the summons and complaint." and again (*see* Declaration of Joannou, Ex. X) "I cannot recollect receiving any copies of any of the materials referred to in Exhibits 2001 or 2002, including the summons and complaint attached to Exhibit 2002."

Next, after the denial of physical receipt was proven wrong, (Ex's. D, G & H), Wargaming switched direction and presented a constantly changing set of factual and legal assertions shrouded in a fluid legal position on "proper service."   Wargaming achieved its desired obfuscation and misdirection of the PTAB.  For example, the PTAB was so unfamiliar

---

[1] Exhibits A - V were submitted by Wargaming.   GAT has added Exhibits W -  AA.

[2] It should be noted that, last Monday's decision from the United States Supreme Court, issued long after the conclusion of the IPR in this matter, determined that the one year statutory bar set forth in 35 USC §315(b) can be ignored by the PTAB even without cause and not subject to any judicial review. see: *Thryv, Inc., fka Dex Media, Inc. V. Click-to-call Technologies, LP, et al.* Certiorari to the United States Court of Appeals for the Federal Circuit  No. 18–916. (Argued December 9, 2019—Decided April 20, 2020)

with judicial procedure that it became confused, as noted by the CAFC which commented on the

IPR Panel's confusion:

> "Another APJ on the panel expressed his concern that "[i]f we don't have a [district court] decision saying that service occurred, what is it that we are supposed to hang our hat on here?" J.A. 3110. . . . and emphasized that "no district court has deemed service to have occurred." (*Game & Tech, Co. v Wargaming Grp*., 942 F.3d 1343, 1347 (Fed. Cir. 2019).

The CAFC, knowing such to be an incorrect statement of judicial proceedings, concluded:

> "At the outset, we address GAT's assertion that the Board erred by holding . . . that it cannot find proper service if "no district court has deemed service to have occurred." *Wargaming* , 2018 WL 4278986, at *6. **We agree with GAT**. . . . The Board cannot strictly rely on a district court's determination of proper service **because district courts rarely make such determinations**. Indeed, where the parties do not challenge service, a district court might never determine whether service was proper or whether the defendant waived its defense of improper service. *(GAT v Wargaming at* 1349) (emphasis added)

The PTAB panel clearly had little knowledge or experience in Federal Court procedures and

Wargaming took full advantage of that inexperience it its gamesmanship of the PTAB process.

GAT's IPR counsel, Sughrue Mion, simply struggled to keep up with the ever-changing

assertions of Wargaming.  Service ws never an issue in the District Court proceedinsg.  GAT did

not introduce any false evidence into the record in this Court, nor in any proceedings before the

PTAB.  GAT did not misrepresent the February 11, 2016 agreement of counsel.


## II.    HISTORY

The instant law suit was filed in Texas on July 9, 2015.   Wargaming was served on

December 10, 2015.  [Ex. D, p. 1]

On February 11, 2016, counsel for Wargaming, Mr. Kevin Collins, called undersigned

counsel. (All statements of undersigned counsel are supported by the attached Declaration of

undersigned counsel, Mr. Zito.)  Mr. Collins confirmed the conversation and the agreement of counsel in a follow-up e-mail on February 11, 2016.  [Ex. H].  Undersigned counsel acknowledged the e-mail and confirmed the agreement also on February 11, 2016.  [Ex. H]

Mr. Collins stated that Wargaming was in possession of a copy of the Complaint.  Mr. Collins did not indicate how he and/or his client came into possession of the Complaint. Undersigned counsel does not know how Mr. Collins came into possession of the Complaint. Undersigned counsel was informed that the process server, Mr. Talbot, had served the documents on his client.  It is also possible that he came into possession by other unknown means, including through the copy mailed to his Client in Cypress.

Mr. Collins stated, and confirmed in his e-mail, that he was of the opinion that service was not "properly" effected.  Mr. Collins never stated that service did not occur, only that it was not "properly effected" and he waived any defense based upon the alleged "improper" service. Mr. Collins did not elaborate on "improper service" in either the conversation or the e-mail. Undersigned counsel does not know why Mr. Collins made that assertion at that time. The e-mail also contained the statement:

> **"Nevertherless, we will waive service and our defenses to improper service in exchange for your agreement that we have until April 1 to Answer or otherwise respond to the complaint."**

Because counsel had reached an agreement on accepting service and waiving any "defenses to improper service", undersigned counsel understood that whatever reason or reasons Mr. Collins had for his assertions of improper service were moot and undersigned counsel inquired no further.  Undersigned counsel also understood that by agreement, service had been effected at least as of February 11, 2016.   This was the agreement of counsel and undersigned counsel fully relied upon this agreement and made no further attempts at formalizing service, as

-3-

none were needed.  Undersigned counsel accepted the word of opposing counsel as his bond and had no reason to suspect otherwise.

The civil litigation proceeded in course, Wargaming filed a timely answer and a motion to transfer.  The case was transferred to California.  Neither party raised any issues regarding service.  Undersigned counsel gave no further thought to service.

The litigation was stayed in November of 2016 [D.E. #23] and the case became dormant.

Wargaming, filed an IPR request on March 13, 2017, more than year after counsel agreed on service and four months after the stay.  Our firm raised no issue as to the timeliness of the filing, no discussion of counsel was had regarding the new IPR, as the parties had already agreed to stay this matter four months earlier [D.E. #23], pending the resolution of a different IPR filed by a third party.

## III.    THE IPR

Plaintiff, GAT, engaged the law firm of Sughrue Mion to serve as counsel in the IPR proceedings at the PTAB.  Undersigned was consulted for discussions in the IPR proceedings and provided documents to Sughrue and two declarations, but took no role in briefing at the PTAB.  Final oral argument was conducted by Mr. Castellano of the undersigned firm, after briefing was completed by Sughrue.

The Sughrue firm contacted undersigned in March of 2017 and asked if we had ever served the Complaint on Wargaming.  Undersigned counsel was surprised to hear that more than a year after the litigation had begun, Wargaming had stated in writing that: "Wargaming.net never received a copy of the summons and complaint." (Ex. W, Wargaming Petition for IPR proceeding at p. 73).  Wargaming had obviously in fact received a copy of the Complaint.

Wargaming's counsel had called, had attended hearings, filed an answer and moved to transfer to California.  We provided Sughrue with a copy of the Declaration of the process server, Mr. Talbot, from our electronic files, which indicated service on December 10, 2015.  [Exhibit I, p.3 ]  This one page document has a December 13 signature of Mr. Talbot and a certification at the bottom signed by Mr. Bridgman, dated December 17, 2015.  We also provided a "Certificate - Attestation" from our electronic files which indicated service on December 14 (Ex. Z page 1).  Sughrue submitted these two pages to the PTAB as exhibits 2002 and 2001, respectively.  Undersigned does not know if the correct service date was December 10 or December 14, 2016, however it appears from the documents that December 10 is the correct date of service by Mr. Talbot and that December 14 was written in error by the certifier on IPR exhibit 2001 (Ex. Z).

        GAT's IPR counsel, Sughrue, included these two pages as exhibits 2001 and 2002, as an attachment to GAT's July 12 IPR response, with the assertion that: (see: Ex. C p.1)

> First, Wargaming.net LLP, a real party-in-interest to this proceeding (*see* Petition at 72), was served with a complaint alleging infringement of the '243 patent on December 14, 2015, in accordance with the laws of England and Wales.  Therefore, this Petition is barred under 35 U.S.C. §315(b)

Sughrue appears to have relied upon the date stated by the certifier on exhibit 2001.

        We were subsequently asked by Sughrue, in July, 2017, for any additional documents and undersigned counsel provided all documentation in our electronic files related to service.  We had no e-mail records of our correspondence with the process server or with the Covington firm.[3]  We provided copies of our  files on service, which included attachments from the process

---

[3] All of the firm's e-mail records (not just GAT records, but all e-mail records) were lost in August of 2016, having been destroyed by our ISP, Verio, International.  We filed suit against Verio seven months earlier because of the damage done to our records.  *see* Ex. AA, *DNL Zito v Verio International* 1:16-cv-01742 DCD filed August 29, 2016, complaint at paragraph 9.  None

server that had been saved in our electronic records, as well as copies of the Complaint and of the stamped Summons received from the Court [D.E. #3]. We understand that those were submitted to the PTAB as supplemental exhibits 2001S (Ex. Z) and 2002S (Exhibit D). These exhibits were submitted to the PTAB with a cover document, Exhibit Y. Suhgure's second submission to the PTAB made no representation regarding the attachments to the Declaration of Mr. Talbot. These were records submitted to support the assertion that Mr. Talbot had actually physically served papers on Mr. Joannou on December 10, 2015, which was the sole issue raised by Wargaming, which had denied that any physical service of any papers had occurred.

Instead of acknowledging that service was complete and effective as of February 11, 2016 and honoring the agreement of counsel, Wargaming's counsel instead filed a fraudulent declaration from Mr. Joannou asserting that Wargaming "had never been served" and asserting that the process server, Mr. Talbot was lying. [Wargaming Brief at p 3, Ponder Declaration ¶ 39 and Declaration of Joannou Ex X]:

> On August 16, 2017, Wargaming filed a Reply supporting its Petition for Inter Partes Review and supporting declaration from Wargaming's agent, Mr. Joannou, stating that he had no record or recollection of having been served with any documents and his diary indicated that it was very unlikely that he was in the office at the time he was allegedly served. Ponder Decl., ¶ 39.

The PTAB determined that Mr. Talbot had indeed served Mr. Joannou: (see Exhibit S, PTAB Final Decision):

> On one hand, therefore, we have Mr. Talbot's Witness Statement of Service, which was signed only three days after the alleged service took place on December 10, 2015, and testimony from Mr. Talbot confirming that the first page of Exhibit 2002 (Supplemental) is his "proof of service." On the other hand, we have testimony from a witness more than one and a half years after the alleged service stating that he does not recall having received documents from Mr.

_____

of the lost records were ever recovered.

> Talbot. We do not find either Mr. Talbot's or Mr. Joannou's testimony to lack
> credibility, but Mr. Joannou's testimony is inconclusive at best. Based on our
> review of the evidence, we credit Mr. Talbot's testimony that he delivered some
> documentation to Mr. Joannou.

Wargaming, in November of 2017, then changed its excuse to "improper service" alleging that

the Summons was not properly stamped.  However, the issue of proper service and any defenses

were waived by agreement of counsel in February 2016 (Ex. H)  thus the issue of properly

stamped copies of a Summons raised for the first time by Wargaming late in the process and

only after its first position of "no physical service at all" had failed, was irrelevant.  This

prompted undersigned's first declaration which referenced the agreed waiver of defenses of

improper service. (Ex. K)

Had Wargaming not started down this nonsensical path, of denial of physical service and

then disavowing the written agreement of counsel, they could have avoided all of the effort they

now complain about.

To their credit however, this gamesmanship directed at the PTAB was successful in

confounding the issue of service and keeping the IPR alive to final decision.  This preposterous

contention that a bonded process server would lie about service and that a licensed English

Solicitor, GH Bridgman, would fraudulently certify that lie, necessitated the deposition of Mr.

Talbot.  This extra activity was not caused by GAT.  The necessity of a deposition was caused by

the fraudulent declaration of Wargaming.  Wargaming's own Ex. D is a true and correct copy of

the declaration and certification of the fact that physical service did in fact occur on December

10, 2015.   Wargaming's own Ex. H is proof that Wargamings counsel was aware of the service

and waived any defense of improper service.  The CAFC confirmed that service occurred: "The

process server served Wargaming.net on December 10, 2015 "with the Summons in a Civil

Action issued herein, together with" the attached documents." *see Game & Tech, Co. v Wargaming Grp.*, 942 F.3d 1343, 1346 (Fed. Cir. 2019)

Once Mr. Talbot was deposed, which was insisted upon by Wargaming, it became clear that Mr. Joannou had been served on December 10, 2015.   It also became apparent that Mr. Talbot may have served the wrong (i.e. unstamped) copy of the Summon on Mr. Joannou. Again, stamped or unstamped was immaterial, as counsel had already agreed to a waiver.

Wargaming's argument then shifted to "no proper formal service" instead of no service. GAT properly countered that new argument by establishing that any service errors were waived when Wargaming's counsel, Mr. Collins waived service and waived "defenses to improper service."   Undersigned counsel filed a notice with this Court [D.E. #37] and a declaration was filed in the PTAB as exhibit 2019/2020 (Exhibit J) establishing that service was proper because of the waiver of any defense based upon defects in service (Ex H).   *see Ex. J, Declaration of Zito:*

> "Plaintiff was contacted by counsel for Defendant, on February 11, 2016 at 1:01
> PM by telephone.  See Exhibit B, phone records of Plaintiff's counsel showing a
> telephone call from 202-662-5598 and the web page form Covington showing Mr.
> Collins number as 202-662-5598.  Wargaming's counsel introduced themselves
> and confirmed service their client in the UK and in Cypress (although the Cypress
> service was informal) and stated that Wargaming would not be challenging
> service." [4]

---

[4] Wargaming's Brief, p.4 final paragraph, asserts that the lack of inclusion of the February 11 e-mail exchange was somehow a deliberate and sinister effort at subterfuge.  As explained in Exhibit AA, see paragraph 9 of the Complaint, undersigned counsel was not in possession of the e-mail exchange at that time, because the ISP had destroyed all e-mail records in August of 2016.  It is also nonsense to assert that undersigned would hide an e-mail that confirms in writing the agreement of a waiver of defenses of service defects.  Exhibit H, the February 11, 2016 e-mail of counsel, which was apparently in the possession of Wargaming's counsel the whole time, confirms the agreement.  Had undersigned counsel been in possession of the e-mail it would certainly have been produced much earlier.  Wargaming only produced the e-mail in December of 2017.  Given the possession of the e-mail, why did Wargaming ever deny service?

It is to be again noted here that counsel's agreement of January 11, 2016 waiving all defenses to improper service had mooted any issue of stamped or un-stamped summons. Had Wargaming simply honored the binding agreement of counsel, none of the activity that it now complains of would have occurred.

Wargaming instead advanced an interesting new theory based upon the principle of "permissible deception of opposing counsel." Undersigned counsel understood that service was *dejure* proper because defenses were waived. Thus counsel made no further effort to effect service, as none was needed. Undersigned counsel was not aware that Wargaming counsel would later say "gotcha" by claiming that the waiver did not count at the PTAB and asserting that there is no statutory date because "Wargaming was never served."

Again, gamesmanship paid off. Undersigned counsel trusted that the issue of formal service was moot as of the agreement of February 11, 2016, and thus made no further efforts at perfecting service, or even of inquiring as to the nature of the asserted lack of formality. The PTAB determined that actual formality was required to comply with 35 U.S.C. §315(b) and that a waiver of defenses in a District Court did not correct any defect in formality for the purposes of 35 U.S.C. §315(b). Wargaming benefitted from its deception.

The obfuscation and misdirection set forth by Wargaming at the PTAB, confounded and delayed the issue, to the extent that a decision on the merits of the validity of the claims was reached. The side issue of when does a waiver count was caused by the deceptive actions and gamesmanship of Warganming, not by any action of GAT and thus no fees shifting is appropriate.

## IV.   WARGAMING'S FALSE ASSERTIONS

Wargaming's claim for fees is based on two assertions.  First, that GAT's IPR exhibit

#2002 Supplemental (Ex. D to Wargaming's motion) was "false evidence" (see Motion at p.1 and

p.13) and Second that the February 11, 2016 conversation and e-mail (Ex. H) exchanged

between counsel did not confirm service (see Motion at p. 2 and p. 14) and thus GATS assertion

that it did was false.   Both of these assertions are demonstratively incorrect.


### a.   Exhibit 2002 Supplemental:

Wargaming makes the following assertion on page 3 of its brief:

> On July 28, 2017, GAT filed Supplemental Ex. 2002, which in addition to
> containing Mr. Talbot's Witness Statement, contained copies of the documents
> allegedly served on Wargaming, ***including two copies of a summons bearing the
> clerk's signature and the Court's seal***. *See* Ponder Decl., Ex. D at Appx1754-55
> and Appx1756-57.

Wargaming does not cite to any document that supports its assertion that GAT ever asserted that

IPR exhibit 2002 (Ex. D) Supplemental was a copy of the materials served by Mr. Talbot.

Wargaming makes several other unsubstantiated accusations in its Motion:

> In fact, although Wargaming has sought an explanation, GAT has never provided
> an explanation as to why it submitted a false exhibit to Mr. Talbot's Witness
> Statement. Ponder Decl., ¶ 47. (see Motion footnote 4)

and:

> GAT failed to explain how or why it had submitted Supplemental Exhibit 2002
> and represented it to be the documents Mr. Talbot served, when it was not. (see
> Motion p. 6)

Wargaming fails to cite to any support for these assertions.  Undersigned is not aware of any

request for any explanation and GAT never filed any false assertions.   Had Wargaming inquired

of undersigned counsel, GAT would have provided any explanation or clarification requested,

-10-

undersigned counsel was not aware of any dispute other than the assertion by Mr. Joannou that

Mr. Talbot was lying because no service had occurred at all.  Un-stamped summons was not an

issue that GAT counsel was aware of at that time.

IPR Exhibit 2002 Supplemental was submitted along with IPR Exhibit 2001

Supplemental, On July 19, 2017 to demonstrate that Mr. Talbot had indeed physically served

papers on Mr. Joannou, with the following statement: (see Ex. Y)

> Counsel for Wargaming Group Limited ("Petitioner") contacted Game and
> Technology Co., Ltd.'s ("Patent Owner's") Counsel by e-mail on July 18, 2017,
> requesting complete copies of Exhibits 2001 and 2002, including the attachments
> referred to in the Exhibits. Patent Owner has provided copies of the attached
> Exhibit 2001 *Supplemental* and Ex. 2002 *Supplemental* to Patent Owner's counsel
> by e-mail on July 19, 2017.

As explained above, counsel provided all of the service related documents in its electronic files,

including those believed to have been served on Wargaming, and other documents.  These

documents included the unstamped Summons served on Wargaming. The documents also

included the stamped Summons from the Court [D.E. #3] which had been sent to the process

server but apparently not served.  Counsel at that time had no reason to believe that Mr. Talbot

had failed to serve the correct documents.

Mr. Talbot, when deposed by Wargaming in November 2017, stated "Whether they are

incomplete or completely wrong I don't know, but they are certainly not what I served." (see

Wargaming's brief at page 4).  This was the first time undersigned counsel learned that Mr.

Talbot may have served the wrong copy of the Summons.  We will never know what papers

were actually served, because Wargaming still denies that any physical service ever occurred

and thus no one has the original papers that were served.

The only declaration from GAT as to service was prompted by the admission of Mr.

-11-

Talbot that he may have served the wrong papers and submitted in November 2017.  After searching paper files from storage (the case had been dormant for over a year, and service had occurred almost two years earlier), undersigned executed a declaration certifying that he had received, in paper, from the process server company, the documents submitted to the PTAB as IPR Exhibit 2019. (Ex. K)  There is no assertion that these documents do not represent the documents as physically served.  Thus there is no assertion that any declaration by counsel or GAT was inaccurate.

Again, this issue was irrelevant, as Wargaming had already waived any defense to improper service.   Undersigned counsel never understood why this issue was continuing to be pursued by Wargaming.


**b.      The February 11, 2016 Agreement:**

There can be no dispute that any and every reading of the e-mail exchange between counsel "confirms service."  Wargaming waived the formalities of services and waived any defenses based on improper service.  There is nothing misleading in D.E. #37 the Notice of Service, filed with the District Court in November 2017.[5]  The entire e-mail (Ex. D) is set forth below:

> Joe- Good to speak with you today. This will confirm our conversation wherein I indicated that Covington would be entering an appearance on behalf of the Wargaming entities in the lawsuit you filed in ED Tex. on behalf of Game & Technologies, Co. Ltd.
>
> As I indicated, we still do not believe that service was properly effected on either Wargaming entity. Nevertheless, we will waive service and our defenses to improper service in exchange for your agreement that we have until April 1 to

---

[5] Wargaming has never objected to this filing.

answer or otherwise respond to the complaint.

Please email me a reply confirming your agreement on this.

Many Thanks

---

Kevin:
I confirm this agreement.

Good to speak with you again.

Undersigned counsel does not know how this email exchange can be read to mean anything other than an agreement by counsel to confirm that service was agreed to be effective and complete as of February 11, 2016.  Yet, Wargaming's Motion asserts:

> ". . .  Mr. Zito's false representation that Wargaming had "confirmed service with an e-mail memorializing the February 2016 call." (Motion page 4)

There is nothing false about claiming that an e-mail which memorializes an agreement to waive defenses to service is an agreement that "confirms service."


## V.   THE EXCEPTIONAL STANDARD

A dispute over formalities of proper service, and over the effect of a waiver of defenses to proper service does not stand out from other cases.

To be "exceptional, a case must "**stand out from others** with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness*, 572 U.S. at 545 (2014)[6]  As discussed in *American Vehicular Sciences LLC v. Autoliv, Inc.*, 305 F. Sup. 3d

---

[6] *See Autoliv*: "In Octane Fitness, despite articulating a less rigid standard than that previously in place, the Supreme Court emphasized that a fee award under § 285 should still be the exception, not the rule. Id. at 555. "District Courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id. at 554. Factors to be considered in determining whether a case is "exceptional" include, but are not limited to, "frivolousness, motivation, objective unreasonableness (both in the factual and legal

728, 737 (E.D. Mich. 2019) the Supreme Court emphasized that a fee award under § 285 should

still be the exception, not the rule. *Octane at* 555.

There is nothing exceptional about this case, nothing stands out, no part of this litigation

or the IPR was conducted in an unreasonable manner.  Wargaming never moved to strike any

service related pleadings, never filed any Rule 11 motions, never fought any actions, nor accused

GAT of fraud or misconduct.  This case falls squarely within the realm of ordinary.  In the

Federal Court action, the parties agreed on everything, including an agreed waiver of service.

The parties jointly agreed to an early stay of this matter based on an IPR filed by a third party.

When Wargaming later filed its own IPR, Wargaming denied that service ever occurred, when

presented with evidnce that physical service occurred and that a waiver of defenses existed,

Wargaming changed its tactic to assert that a waiver of defenses did not constitute "formal

service" for the purposes of 35 USC §315(b) in an IPR proceeding.   This was a novel theory and

---

components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 554, n. 6 (internal quotations omitted). The movant need only establish "exceptional circumstances" under § 285 by a preponderance of the evidence. Id. at 557-58.

Further, "it is the 'substantive strength of the party's litigating position' that is relevant to an exceptional case determination, not the correctness or eventual success of that position. A party's position on questions of law ultimately need not be correct for them to not 'stand[] out,' or be found reasonable." *SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) (citing *Octane Fitness*, 572 U.S. at 554)); *see also Hockeyline, Inc. v. STATS LLC*, 13-cv-1446, 2017 WL 1743022, at *3 (S.D.N.Y. Apr. 27, 2017) ("The fact that a patent holder loses a case does not make it 'exceptional.' A case is not automatically exceptional because a patent was stricken for obviousness; after all, an obvious patent was originally allowed by a patent examiner.").

Finally, even if the Court were to determine that this case is exceptional, Defendants would not be automatically entitled to an award of attorney's fees. See *Icon Health & Fitness, Inc. v. Octane Fitness, LLC*, 576 F. App'x 1002, 1005 (Fed. Cir. 2014) ("The Supreme Court's decision in Octane did not, however, revoke the discretion of a district court to deny fee awards even in exceptional cases."). A determination as to the propriety of a fee award is a separate discretionary inquiry. See 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party.") (emphasis added); *Net Talk.com, Inc. v. Magic Jack Vocaltec Ltd.*, No. 12-CV- 81022, 2015 WL 10015379, at *3 (S.D. Fla. Nov. 20, 2015) (collecting cases stating that the determination as to the propriety of a fee award is a separate discretionary inquiry), report and recommendation adopted by 2016 WL 498437 (S.D. Fla. Feb. 9, 2016), a9'd, 682 F. App'x 941 (Fed. Cir. 2017). "In determining whether to award attorney's fees, courts consider the closeness of the case, the tactics of counsel, the conduct of the parties, and any other factors that may contribute to a fair allocation of the burdens of litigation as between winner and loser." *H-W Technology, Inc. v. Overstock.com Inc*., No. 3:12-CV-0636-G (BH), 2014 WL 4378750, at *7 (N.D. Tex. Sept. 3, 2014)."

was decided in favor of Wargaming, because the patent claims were invalidated by the PTAB.

Although the same documentation was filed in this District Court [D.E. #37] Ex J, more than two years ago, Wargaming never raised any objection to the document nor asserted any denial of service in the District Court.  Wargaming never raised an issue of "exceptionality" and never sought sanctions and never suggested any fee shifting until after the conclusion of the IPR and after the CAFC decision was rendered.  At no time did Wargaming ask GAT to withdraw a pleading or retract a contention.  *see Stone Basket*:

> A "party cannot simply hide under a rock, quietly documenting all the ways it's been wronged, so that it can march out its 'parade of horribles' after all is said and done.'"

*Stone Basket ,LLC v. Cook Med. LLC*, 892 F.3d 1175 at 1181 (Fed. Cir. 2017).

### a.      Wargaming's Exceptionality Assertions are Without Merit:

Wargaming incorrectly asserts that GAT was responsible for the issue of proper service and caused additional unnecessary activity.  As detailed above, this is incorrect.  GAT and Wargaming entered into a written agreement of counsel that established service at least as early as February 11, 2016.  Wargaming embarked on an effort to rid itself of that agreement, first by denying that any physical service occurred at all and then by arguing that the agreement of counsel did not establish the level of "service" required under 35 USC §315(b).  During this process, GAT provided documents, first to establish that physical service actually occurred and second to establish that a waiver of any informalities was made.  Wargaming argues in its motions for fees that GAT's arguments about service were inarticulate.   Inarticulate is not a basis for a finding to meet the exceptional case standard.  In addition, any assertion of misconduct at the PTAB should have been raised and addressed first there.

Having failed to raise an issue of sanctions at the PTAB, GAT cannot now ask the Court to make an assessment and thus is not entitled to any PTAB fees. *see American Vehicular Sciences LLC v. Autoliv Inc.*, at 24:

> Further, the PTAB, in its Final Written Decisions on the three IPRs, made no finding that AVS's position was "meritless," "frivolous," "baseless," etc., but only that it did not find AVS's arguments "persuasive." (See, e.g., DEs 40-9 at 25, 29; 40-10 at 20.) While I recognize that Defendants could be "entitled to reasonable attorney fees based upon the premise" that the IPRs "substituted for the district court litigation," PPG Indus., 840 F.2d at 1569 , if AVS's posture in the PTAB were as egregious as Defendants now portray, it is nonetheless curious that: (1) the PTAB, which could have awarded attorney fees *sua sponte*, did not do so; and, (2) Defendants made no request for fees or for a finding of exceptionality in the PTAB (Tr. at 20-21), the very tribunal which was so deeply ensconced in the merits of the respective positions taken in the IPR proceedings and which has a particular expertise in evaluating the arguments made with respect to prior art, priority and presumably validity.

Wargaming never asked the PTAB for an award of fees.


b.     **GAT Did Not Have a Weak Position on Service**

GAT had a written agreement on service which explicitly waived any defense to improper service.  That is not a weak position.

GAT did not have to prevail on the issue of service for its action to avoid being exceptional.  "A strong or even correct litigating position is not the standard by which we assess exceptionality," and "'[a] party's position on issues of law ultimately need not be correct for them to not "stand[] out" or be found reasonable.'" *Stone Basket ,LLC v. Cook Med. LLC*, 892 F.3d 1175 at 1180 (Fed. Cir. 2017).  GAT's position on service was well founded as detailed herein. Wargaming has the burden of demonstrating exceptionality and it cannot.

**c.     GAT Did Not Engage in any Unreasonable Conduct**

The manner in which this matter was conducted was far from unreasonable.  The two

incorrect assertions of unreasonable conduct made in Wargamings motion are discussed above.

There is nothing unreasonable in a party providing available documents in response to incorrect

broad assertions made by the opposing party.

When Wargaming denied that any physical service was made: "Wargaming.net never

received a copy of the summons and complaint."  GAT responded by providing IPR exhibit 2001

and 2002 which indisputably demonstrated that Wargaming was wrong, physical service of both

the Complaint and the summons had been made. (As confirmed by both the PTAB and the

CAFC).  When Wargaming asked for any additional documents, GAT provided documents in its

files that related to service.   Wargaming, not believing that Mr. Talbot actually delivered

anything to Mr. Joannou,  "I cannot recollect receiving any copies of any of the materials

referred to in Exhibits 2001 or 2002", decided to depose Mr. Talbot.   The deposition proved that

service had indeed occurred.

After the deposition, Wargaming changed its position to: "did not receive a stamped copy

of the summons."  GAT then searched deeper into its records (see Zito Declaration) and agreed

with Mr. Talbot that he may have erroneously served only the unstamped copy of the summons.

This is proper reasonable conduct, by both parties, who learn new information in

response to discovery.  In fact, that is the purpose of discovery.


**d.     Any Fee Request Should Have Been Brought at the PTAB**

Wargaming had ample time and opportunity to bring its motion for fees at the PTAB.

Wargaming made no such request and never raised any issue of improper activity at the PTAB.

-17-

Wargaming should thus be precluded, based upon case law, from seeking fees fro the District Court based upon alleged improper activity that occurred in a separate, but related, matter.  Fees spent on an IPR can be included in a District Court award under exceptional case law, however it must be shown that the District Court case was exceptional and that the IPR was a necessary part of the exceptionality in the District Court.

This matter was stayed in the District Court before any substantive activity occurred. Thus there can be no basis in the District Court proceeding for Wargaming to make any assertion of exceptionality.  In fact, Wargaming does not allege that any activity in the District Court gives rise to any assertion of exceptionality.  There was also nothing exceptional about the proceedings in the PTAB.

Wargaming made no requests for fees or sanctions at the PTAB and is thus precluded from seeking to declare the District Court proceeding exceptional based upon any activity at the PTAB.  Wargaming in its brief asserts that the District Court is the best  place to judge improper activity that occurred at the PTAB, because the PTAB is only good at determining validity.  Yet, Wargaming asked the PTAB to determine service, not the District Court.  It should thus be the PTAB that determines wether or not GAT's position on service was sanctionable.  \

Wargaming is continuing its gamesmanship of intentionally bringing issues in the wrong forum, i.e. ask the PTAB to determine service in the District Court and ask the District Court to determine abuse of proper procedure in the PTAB.

Any assertion of misconduct based on abusing the process at the PTAB should have been raised and addressed first at the PTAB.   Failing to raise an issue of sanctions at the PTAB, Wargaming cannot now ask the Court to make such an assessment and thus is not entitled to any PTAB legal fees.  *see American Vehicular Sciences LLC v. Autoliv Inc.*, at 24:

-18-

Further, the PTAB, in its Final Written Decisions on the three IPRs, made no finding that AVS's position was "meritless," "frivolous," "baseless," etc., but only that it did not find AVS's arguments "persuasive." (See, e.g., DEs 40-9 at 25, 29; 40-10 at 20.) While I recognize that Defendants could be "entitled to reasonable attorney fees based upon the premise" that the IPRs "substituted for the district court litigation," *PPG Indus.*, 840 F.2d at 1569 , if AVS's posture in the PTAB were as egregious as Defendants now portray, it is nonetheless curious that: (1) the PTAB, which could have awarded attorney fees *sua sponte*, did not do so; and, (2) Defendants made no request for fees or for a finding of exceptionality in the PTAB (Tr. at 20-21), the very tribunal which was so deeply ensconced in the merits of the respective positions taken in the IPR proceedings and which has a particular expertise in evaluating the arguments made with respect to prior art, priority and presumably validity.

The PTAB was "the very tribunal which was so deeply ensconced in the merits of the respective positions taken in the IPR proceedings" and was fully involved in the procedural activities now complained of by Wargaming.  Yet, Wargaming never asked the PTAB for an award of fees.  The PTAB made no *sue sponte* findings of exceptionality, bad faith, improper arguments, improper motive, nothing.

A "party cannot simply hide under a rock, quietly documenting all the ways it's been wronged, so that it can march out its 'parade of horribles' after all is said and done.'"

*Stone Basket ,LLC v. Cook Med. LLC*, 892 F.3d 1175 at 1181 (Fed. Cir. 2017).


## VII.    WARGAMING'S FEE AMOUNT IS NOT REASONABLE

Wargaming is seeking fees of $133,682 for the single issue of proper service, claiming to have spent 267 hours of experienced attorney time on this one minor issue at an hourly rate of over $500.  Wargaming does not explain how this one issue accounted for fully 1/3 (one third) of the total time spent on the IPR.  Simply listing bulk time entries does not meet the standard of specificity and justification for that excessive expenditure of time.

Examples of unjustified excessive time:

-19-

> *Task 1: Investigate Service Arguments in the Patent Owner's*
> *Preliminary Response (POPR)*

The service arguments in the POPR consisted of two one-page exhibits 2001 and 2002 and one

assertion, i.e. Wargaming was served by Mr. Talbot in December 2015.  Yet, Wargaming

counsel had three attorneys duplicating each others efforts and spending a total of 18.8 hours

contemplating this issue.  There is no explanation as to why "highly qualified and experienced"

counsel required so much time on such a simple task.

> *Task 2: Analysis and Advice on UK Service Procedure and Law*

There is no explanation for why 12.9 hours of billable time were required to look up the

rules on service in England.  Especially since they are cited on the service documents provided

by GAT, contained in FRCP 4 and are fairly well known to any experienced counsel.

> *Task 5: Service Discovery in London*

The Talbot deposition (Ex. G) lasted under 3 hours and totaled only 84 pages.  This was

the deposition of a third party so no witness prep occurred.  Wargaming counsel spent 41.2 hours

of billable time during their trip to London.   There is again, no explanation as to why the

amount of time billed bears no relation to the size of the task.

> *Task 13: Appellate Argument on Service*

No explanation as to why 5.5 hours were billed for an oral argument that lasted 30 minutes.

Especially since counsel had already billed 25.2 hours in preparing for the oral argument.

Under the Lodestar method, Plaintiff's attorneys are entitled to be compensated for "all

hours reasonably spent on the matter." *Serrano IV, supra,* 32 Cal.3d at 635, 186 Cal.Rptr. 754,

652 P.2d 985; *Sundance v. Municipal Court,* 192 Cal.App.3d 268, 273-274, 237 Cal.Rptr. 269

(1987).   It is the burden of counsel to establish reasonability, yet counsel has not.   GAT

believes that the number of hours should be reduced by 15 hours for task 1, reduced by 10 hours for task 2, reduced by 20 hours for task 5 and reduced by 3 hours for task 13.

## VII.   EXPENSES

Mr. Batts $9,578.86 business class ticket from New York to London is not reasonable and the unusual price is not explained.  Also, no explanation is given for the $2,685.16 ticket for Mr. Ponder with its $600 upgrade.  Tickets for round trip direct flights between New York and London, average well below $1,000.  Even Mr. Ponder's airfare $3,285 falls well outside the highest month. see for reference www.faredetective.com:



The proper expense award should be reduced by at least $7,000 to account for the unexplained difference in airfare between Mr. Batts and Mr. Ponder.  The expenses should be reduced by another $2,000 to account for the unexplained excessive cost of the tickets, well above the typical price for this flight.

## VIII.   WARGAMING'S INAPPROPRIATE PERSONAL ATTACKS

Wargaming's inappropriate personal disparagement of counsel is addressed in the Zito declaration and is only acknowledged herein as inappropriate.

## IX.   CONCLUSION

Wargaming has failed to make a showing that this matter was exceptional and its motion for fees should be denied in its entirety.

Dated: April 29, 2020                    Respectfully Submitted,

/s/ Joseph J. Zito
Joseph J. Zito
Luiz Felipe Oliveira
DNL ZITO CASTELLANO
1250 Connecticut Ave.
Suite 700
Washington, D.C., 20036

Attorneys for Plaintiff Game and Technology Co.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was served upon all counsel of record who are deemed to have consented to electronic service via the CM/ECF system on April 29, 2020, in accordance with Rule 5-3.2 of the Local Civil Rules of the United States District Court for the Central District of California.

/s/ Joseph J. Zito
Joseph J. Zito